DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment issued by the Huron County Court of Common Pleas which granted a motion to suppress evidence obtained from the search of a passenger in a motor vehicle traffic stop. Because we conclude that the trial court's ultimate decision to suppress the evidence was proper, we affirm.
On December 24, 1999, appellee, Marcus Caldwell, was arrested for and subsequently indicted by the Huron County Grand Jury for one count of possession of cocaine, in violation of R.C.2925.11(A). The charge stemmed from incidents which occurred when an Ohio State Highway Patrol trooper stopped a van in which appellee was one of two passengers. Appellant, the state of Ohio, presented the following facts at a hearing conducted on appellee's motion to suppress.
At approximately 2:11 a.m., the trooper observed a van driven by James Newcomer twice cross the roadway's outside edge lines by about a tire width. Although the van never left the paved berm area or exhibited any other erratic movements, the trooper decided to stop the vehicle.
The trooper approached the van from the front passenger side and asked the driver for his license and registration. Newcomer stated that he was driving back to Mansfield, Ohio and had become lost. According to the trooper's testimony at the hearing, he could not see well into the van because it was dark and the van had curtains or shades in the rear and side windows. However, the trooper testified that he also asked the front seat passenger for identification. That passenger stated that he had no identification with him but volunteered his social security number. Appellee, a passenger in the second seat of the van, also spoke, alerting the trooper that another person was in the van. Both passengers were African-American
The trooper then asked the driver, a Caucasian male to exit the van and enter his cruiser. The trooper's check of Newcomer's license and registration revealed no violations. The trooper also talked to the driver in order to check for signs of intoxication. The trooper stated that although Newcomer's eyes were somewhat glassy, he observed no smell of alcohol on the driver's breath or other signs of intoxication. The trooper then asked the driver how many and who his passengers were. Newcomer told him that he had picked up the two passengers in Toledo and was giving them a ride back to Mansfield where they lived. The trooper testified at the hearing that, despite no obvious signs of intoxication, he also intended to administer a gaze nystagmus test on the driver.
At this point, a Huron County Sheriff's deputy arrived at the scene. The trooper exited his cruiser and told the deputy that he had the driver in his vehicle and there were at least two passengers in the van. According to the trooper, he was "fearful that there would be other people in the back of the van." The trooper stated that he wanted to approach the van with the deputy for the purpose of identifying the passengers. The officer once more approached the right side of the van and began speaking with the two passengers. Both the trooper and the deputy testified that the passengers were very cooperative. Appellee, an African-American, opened the van's sliding door and the trooper continued to speak with him.
The trooper than stated he had the passengers get out of the van "for officer safety purposes." The passengers offered no resistance and appellee produced an Ohio identification card. The officers continued talking to the passengers. The trooper stated that, because it was cold outside, he wanted to take appellee back to his patrol car. Again, "for officer safety purposes," the trooper stated he always performs an outer garment pat-down of anyone he places in his vehicle. During the pat-down of appellee, the trooper noticed a white bag on the snow between appellee's feet. The trooper then placed appellee in the back seat of the cruiser and went back to retrieve the bag. A preliminary field test revealed that the bag contained cocaine. Appellee denied that the bag was his but was arrested and taken into custody. The driver, who was not cited for any traffic violation, and the other passenger were permitted to leave.
The trial court granted appellee's motion to suppress ruling that two minor crossings of the edge line, under the circumstances, were not sufficient to justify an articulable reasonable suspicion that a violation of the law had occurred. The court also stated, however, that the interrogation and search of the two passengers were proper, had the initial stop been justified.
Appellant now appeals that decision, setting forth the following sole assignment of error:
 "IT WAS ERROR FOR THE TRIAL COURT TO FIND THAT THERE WAS NO ARTICULABLE REASONABLE SUSPICION TO STOP THE AUTOMOBILE APPELLEE WAS A PASSENGER IN WHEN IT WAS OBSERVED IN THE EARLY MORNING HOURS TWICE CROSSING THE RIGHT
 EDGE LINE IN THE SPAN OF FIFTEEN SECONDS AND THE TRIAL COURT'S FINDING WAS AN ERROR AS A MATTER OF LAW."
When determining a motion to suppress, a trial court becomes the trier of fact and is, therefore, in the best position to resolve questions of fact and to evaluate the credibility of witnesses. State v. Vance (1994), 98 Ohio App.3d 56, 58; Statev. Williams (1993), 86 Ohio App.3d 37, 41. An appellate court must accept the findings of fact if supported by competent credible evidence. Id. However, accepting those facts as true, the appellate court must independently "determine as a matter of law without deference to the trial court's conclusion, whether they meet the applicable standard." Id.
Whether or not there was some reasonable articulable suspicion of criminal activity to justify an investigatory stop under the Fourth Amendment of the United States Constitution must be determined on the specific facts of each case. See Whren v.United States (1996), 517 U.S. 806; Dayton v. Erickson (1996),76 Ohio St.3d 3. We have previously determined that a vehicle's weaving out of a marked lane for no apparent reason could be sufficient to establish reasonable suspicion to make a traffic stop. See State v. Bolding (May 28, 1999), Erie App. No. E-97-115, unreported; State v. Mortenson (Feb. 27, 1998), Erie App. No. E-97-107, unreported; State v. Deichler (May 23, 1997), Erie App. No. E-96-091, unreported.
In this case, the van traveled beyond the marked edge lines twice in a short period of time at an early morning hour. We conclude that, in the interest of protecting the public from a possibly intoxicated or drowsy driver, the trooper had a reasonable articulable suspicion to stop the van. Therefore, the trial court's determination that the initial stop was not justified was improper. However, more troubling to us is the extension of that investigatory stop to include the passengers under the facts that were presented here.
When a motor vehicle is validly stopped by police, the propriety and legality of a frisk and search of passengers in the vehicle is determined by considering the totality of the circumstances. State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus; Terry v. Ohio (1968), 392 U.S. 1, 19-22. A pat-down is reasonable if it is clear that the officer "was aware of specific facts which would warrant a reasonable person to believe he was in danger * * *(citations omitted)." State v. Evans
(1993), 67 Ohio St.3d 405, 413.; State v. Watson (Aug. 23, 1996), Montgomery App. No. 15449, unreported.
For example, the right to frisk "is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." State v.Evans, supra. Furtive gestures by the occupants of a vehicle may provide a reasonable basis for a pat-down. State v. Williams
(1994), 94 Ohio App.3d 538, 543; State v. Robinson (June 2, 2000), Lucas App. No. L-99-1295, unreported. Observation of bulges in an individual's clothing is also a relevant factor.Pennsylvania v. Mimms (1977), 434 U.S. 106, 111-112. Where a passenger was leaning forward with his hand behind his back, this court determined that a pat-down and search of the passenger was proper. See State v. Braxton (Mar. 31, 1993), Lucas App. No. L-91-266, unreported.
However, where a passenger is cooperative and gives no indication that he is armed or dangerous, a pat-down or frisk is not warranted. State v. Cantelupe (June 28, 2000), Harrison App. No. 99 511 CA, unreported. Likewise, this court has determined that police may not require a passenger to submit to a pat-down and be placed in a police cruiser for questioning where the facts do not justify such detention. See Pemberville v. Hale (1998),125 Ohio App.3d 629.
In this case, no evidence was presented that either the driver or the passengers acted in any manner to warrant any fear of danger or suspicion of criminal activity. In fact, by the officers' own testimony, the passengers were "very cooperative," readily volunteered information, and did not resist when asked to get out of the vehicle. Although the trooper may have been justified in conducting a brief investigation, we can find nothing which warranted the continued questioning or the need to put the passengers in the cruiser. In our view, after questioning the driver, finding nothing amiss and briefly talking with the passengers, the trooper had no further reason to detain the van or its occupants. Consequently, the detention and search of the passengers were not justifiable under the totality of the circumstances. Therefore, we conclude that the trial court, although it reached the right result for the wrong reason, properly granted appellee's motion to suppress.
Accordingly, appellant's sole assignment of error is not well-taken.
The judgment of the Huron County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.